**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **PROMPT MEDICAL SYSTEMS, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:05-CV-485-LED** |
| **vs.** | § | **PATENT CASE** |
| | § | |
| **McKESSON CORP.,** | § | |
| | § | |
| **Defendant.** | § | |

| | | |
|---|---|---|
| **PROMPT MEDICAL SYSTEMS, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:05-CV-487-LED** |
| **vs.** | § | **PATENT CASE** |
| | § | |
| **3M HEALTH INFORMATION** | § | |
| **SYSTEMS, A Division of 3M Company,** | § | |
| | § | |
| **Defendant.** | § | |

| | | |
|---|---|---|
| **PROMPT MEDICAL SYSTEMS, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:06-CV-20-LED** |
| **vs.** | § | **PATENT CASE** |
| | § | |
| **UNICOR MEDICAL, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

1

## MEMORANDUM OPINION

This claim construction opinion interprets disputed terms in United States Patent No. 5,483,443 ("the '443 Patent"), as well as terms that the parties agreed to construe.  Having considered the parties' submissions and oral arguments, the Court construes the agreed and disputed terms in each of the cases now before the Court as follows.[1]

## BACKGROUND

The '443 Patent, held by Prompt Medical Systems, L.P. ("Prompt"), is directed towards a method for computing current procedural technology ("CPT") codes from physician-generated documentation.  CPT codes provide a uniform language to describe a physician's work for the purposes of patient billing for medical and surgical procedures, diagnostic tests, laboratory studies, and other medical services rendered.  Evaluation and management ("E/M") services codes are a specific subset of CPT codes used to classify the type of work physicians engage in.  E/M services are broken down into three key components, which correspond generally to the components of a physician's encounter with a patient:  patient history, examination, and medical diagnosis.

The invention permits physicians to record medical data by entering into a computer information about patient encounters.  With respect to each component, the computer prompts the physician with lists of specific descriptions from which the physician chooses the particular descriptions that best characterize the patient's status.  Each description has a particular CPT code assigned to it.  When the physician enters his or her choices, the computer factors the corresponding

---

[1] Although additional terms are at issue in the *3M* and *Unicor* actions, all of the terms at issue in the *McKesson* action are at issue in the *3M* and *Unicor* actions.  Therefore, Appendix A to this Memorandum Opinion, which contains the relevant claims of the '443 Patent, indicates in bold-underline type terms that have been construed in all three cases and indicates in plain underline type terms that have been construed only in the *3M* and *Unicor* actions.  Appendix B contains the Court's Claim Construction Chart, which construes the relevant terms.

2

codes into a final calculation to arrive at an automatic determination of how much a patient should be charged for an encounter.

Prompt sued McKesson Corporation ("McKesson"), 3M Health Information Systems ("3M") and Unicor Medical, Inc. ("Unicor") (collectively "Defendants") separately, accusing each Defendant of infringing the '443 Patent. Due to the overwhelming identity of terms for which the parties seek construction, the Court held a joint claim construction hearing for all three actions on June 22, 2006.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among

3

the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'"  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

4

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id*. at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court.  *Id*.  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id*.

## CONSTRUCTION OF TERMS

### A.  <u>Agreed Terms</u>

1. <u>Agreed Terms in All Three Actions Before the Court</u>

*"Medical professional"*

All parties and the Court agree that the term "medical profession" means "the physician, assistant, nurse or other health care provider evaluating the patient's medical problem."

*"Displaying a set of queries to the medical professional"*

All parties and the Court agree that this term means "prompting the medical professional with lists of choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation during the patient encounter."

*"Receiving input from the medical professional in response to said queries"*

All parties and the Court agree that this term means "receiving during the patient encounter from the medical professional selections from lists of choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation."

*"Computing a final CPT code based on said historical code, said examination code and said medical decision making code and a set of stored patient encounter criteria"*

All parties and the Court agree that this term means "using a computer during the patient encounter to determine the final CPT code based on the values associated with the historical component, examination component, and medical decision making component to an adjustable, customized standard related to the physician's encounter with the patient."

*"Medical decision making criteria"*

All parties agreed during oral argument that "medical decision making criteria" should be construed as follows:

> [A]n adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation including information which is the result of the interaction of the history and examination portions of an encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based.

The Court agrees and construes the term accordingly for all three actions.

*"Computing a component medical decision code based on said input and a set of stored medical decision making criteria"*

All parties agreed during oral argument that this term means the following:

> [U]sing a computer during the patient encounter to determine a value associated with the medical decision component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the

patient's medical record and required documentation including the information which is the result of the interaction of the history and examination portions of an encounter and represents a level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based.

The Court agrees and construes the term accordingly for all three actions.

2.  Agreed Terms in the *3M* and *Unicor* Actions

*"Medical decision making data"*

The parties in the *3M* and *Unicor* actions agree that the term "medical decision making data" means "information which is the result of the interaction of the history and examination portions of an encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation." The Court agrees with the construction and construes the term accordingly for the *3M* and *Unicor* cases.

*"Storing medical decision making data in a memory"*

The parties in the *3M* and *Unicor* actions agree to construe this term as follows:

[P]lacing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation in a computer memory during the patient encounter.

The Court agrees with the construction and construes the term accordingly for the *3M* and *Unicor* actions.

*"Comparing the medical decision making data to a set of medical decision making criteria to define a medical decision making code"*

The parties in the *3M* and *Unicor* actions agree to construe this term as follows:

7

[C]omparing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the medical decision making component in generating a CPT code.

The Court agrees with this construction and construes the term accordingly for the *3M* and *Unicor* actions.

> *"Comparing the historical code, the examination code, and the medical decision making code to a set of final criteria to define a final CPT code"*

The parties in the *3M* and *Unicor* actions agree that this term means "comparing the values associated with the historical component, examination component, and medical decision making component to a standard on which the final CPT code is based during the patient encounter." The Court agrees with the construction and construes the term accordingly for the *3M* and *Unicor* actions.

## B.  Disputed Terms

In each of the actions now before the Court, the parties agree that their dispute can be boiled down to how the Court should construe two basic "root" terms:  "historical data" and "examination data."  The parties' competing constructions for the other disputed terms stem from their disagreement over how to define these root terms.  In turn, the parties dispute the root terms' constructions only to the extent that they disagree on whether those constructions should use the word "including" or the phrase "consisting of" (or in appropriate circumstances "that consists of") and whether, at a particular location for each term, the constructions should use the word "and" or the phrase "and/or."

1. <u>History Component—Disputed Terms Rooted in "Historical Data"</u>

The parties disagree over the construction of "historical data," "storing historical data in a memory," "comparing the historical data to a set of historical criteria to define a history code," "historical criteria," and "computing a component historical code based on said input and a set of stored historical criteria."

*"Historical data"*

Both sides derive their competing constructions of "historical data" from the same sentence in the specification: "The history portion usually consists of queries about the patient's current health, previous problems and any related family or social problems."  '443 Patent, col. 4:6-8.  In light of this language, Prompt construes the term to mean "information *including* the patient's current health, previous medical problems, *and/or* any related family or social problems  that becomes the basis of the patient's medical record and required documentation."  Conversely, Defendants originally proposed the construction "information *consisting of* the patient's current health, previous medical problems, *and* any related family or social problems that becomes the basis of the patient's medical record and required documentation."

Prompt argues that the nature of the history component mandates Prompt's proposed construction.  Prompt produces both intrinsic evidence and an American Medical Association ("AMA") publication to show how the historical component is broken down into different types of patient history analysis, characterized by their level of detail.  A physician who conducts a "problem focused history" records the patient's chief complaint and a brief history of the present illness or problem.  CELESTE G. KIRSCHNER, ET AL., AM. MED. ASS'N, PHYSICIANS' CURRENT PROCEDURAL

TERMINOLOGY: CPT '95  7 (1995) ("CPT '95").   A physician conducting an "expanded problem focused history" records the same information that is collected for a problem focused history, along with a problem pertinent system review.  *Id.*  A physician conducting a "detailed history" records the same information collected for an expanded problem focused history but extends the problem pertinent system review to "a limited number of additional systems" and also records pertinent past, family and/or social history directly related to the patient's problems.  *Id.*  Finally, a physician conducting a "comprehensive history" records the same information collected for a detailed history, except that he also reviews systems directly related to the problems identified in the present illness's history, conducts a review of all additional body systems, and obtains a complete past, family, and social history.  *Id.*  The specification lists several decision matrix charts in Appendix B that reference these different types of histories, as well as figures displaying situations where only a problem focused history is taken, but more detailed histories are possible.  *See* '443 Patent, Figs. 1A–1C; Appendix B (decision matrix charts for new patients and established patients).

Prompt contends that because the patient encounter is a "flexible event" involving fact-sensitive inquiries and decisions, medical coding must be flexible enough to permit physicians to conduct any or all of these histories.  Thus, Prompt argues that only its use of the terms "including" and "and/or" correctly sets the parameters of a medical coding technology designed to afford physicians the ability to decide which type(s) of historical information they wish to collect.  Likewise, Prompt argues that Defendants' proposed construction requires physicians in all cases to obtain full-scale histories.  Prompt also argues that the specification's use of  "usually" requires "and/or" in the construction of "historical data."  *See* '443 Patent, col. 4:6-8.  Finally, Prompt contends Defendants' construction excludes preferred embodiments by restricting a physician's

10

freedom to not discuss the existence of "related family or social problems" or to not ascertain more detailed aspects of a patient's history.  This is because, as Prompt argues, the Patent and Trademark Office defines the "[t]he transitional phrase 'consisting of' [to] exclude[] any element, step, or ingredient not specified in the claim."[2]   Recognizing Prompt's concerns, Defendants proposed the following modified construction: "information consisting of the patient's current health *and any taken* previous medical history *and/or* related family or social problems that becomes the basis of the patient's medical record and required documentation."  This construction, Defendants argue, avoids a construction that would require physicians in all cases to take more extensive histories, but at the same time avoids a result that would permit a physician to elicit a history without ascertaining the patient's current health—a result that Defendants characterize as absurd.  Indeed, Prompt made no convincing argument that the history component would ever not include information about a patient's current health.  Thus, the parties essentially agree that a patient's current health is a necessary sub-component of the history component.   Nevertheless, Prompt still argues that Defendants' modified construction unduly excludes preferred embodiments and only the use of "including" and "and/or" provides physicians appropriate flexibility.

Prompt's arguments are unconvincing.  The specification clearly uses the terms "consists of" and "and" when describing data ascertained in the historical component.  A patentee is free to act as his or her own lexicographer and is free to set forth special definitions of claim terms in the specification that disclaim other potential definitions. *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1358 (Fed. Cir. 2006); *Phillips*, 415 F.3d at 1316.  The patentees did so here when they identified

---

[2] *See* MPEP § 2111.03 (internal citations omitted; second and third alterations added).

the universe of physician queries related to patient history—queries about the patient's current health, previous health problems, and related family or social problems—and specified that patient history "consists of" those queries.  Although Prompt correctly notes that the sentence in column 4, lines 6 to 8 uses the qualifier "usually," all Prompt argues is that "the history portion usually, but not always, consists of queries."  Prompt does not explain why the patentees' use of "usually" calls for a construction that employs the open-ended word "including" and disregards the language that the patentees used to follow the qualifier.  The specification's use of "usually" signifies to skilled artisans that the physician may opt to utilize only a subset of the universe of queries—for example, a physician or other health worker may opt to elicit information only about the patient's current health and previous medical problems.  Further, Defendants' use of the phrase "and any taken previous medical history"[3] and modified placement of "and/or" helps to properly encapsulate a physician's option to elicit or not to elicit historical information in addition to the patient's current health.

Prompt's citation to the decision matrix charts and figures 1A–1C simply does not support a construction that employs "including."  Likewise, Prompt's extrinsic evidence, though informative as to the types of historical information that a physician has the option of collecting, does not alter the clear meaning of the language, which both sides agree forms the basis for the definition of "historical data."  Neither the charts nor the figures, nor any other part of the patent, nor Prompt's

---

[3] Defendants' use of "previous *medical history*" in lieu of the patent's less exact phrase "previous problems" does not raise concerns.  Both sides' original competing constructions reflected the parties' agreement that "previous problems" meant "previous medical problems."  Given that this entire construction dispute pertains to the historical component, the words "history" and "problems" seem relatively interchangeable in this instance.  Moreover, the decision matrices in Appendix B of the '443 Patent specifically identify "Medical History" as one of the major areas of physician-elicited information within the historical component.

extrinsic evidence, identify or define other queries or data that a physician may elicit in addition to the universe of queries set out in the sentence at column 4, lines 6 to 8.

Defendants indicated during oral argument that more exact language than the phrase "and any taken" could be used to reinforce the necessary and optional aspects of the historical component. Strategic placement of the adverb "optionally" reinforces those aspects more precisely.  Accordingly, the Court construes the term "historical data" to mean "information *consisting of* the patient's current health *and*, *optionally*, *any* previous medical history *and* any related family or social problems that becomes the basis of the patient's medical record and required documentation."    This construction more precisely captures the '443 Patent's expression of "historical data."  The commas that bound "optionally" clarify that the adverb is to be distributed both to "any previous medical history" and "any related family or social problems."  Retaining the verb conjugation "becomes" clarifies that the patient's medical record and required documentation are based on all the information that makes up "historical data," not merely information pertaining to related family or social problems.  Finally, the Court opts to use the phrase "consisting of" as opposed to "that consists of" to avoid repetitive and possibly confusing use of the word "that."

As noted, the Court will construe the branch terms of "historical data" in accordance with the reasoning that grounds the Court's construction of the root term itself.

*"Storing historical data in a memory"*

This term means "placing information *consisting of* the patient's current health *and, optionally, any* previous medical history *and* any related family or social problems that becomes the basis of the patient's medical record and required documentation in a computer memory during the patient encounter."

13

*"Comparing the historical data to a set of historical criteria to define a history code"*

The Court construes this term as:

[C]omparing information *consisting of* the patient's current health *and, optionally, any* previous medical history *and* any related family or social problems that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the historical component in generating a CPT code.

*"Historical criteria"*

The term "historical criteria"  means "an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation *consisting of* the patient's current health *and, optionally, any* previous medical history *and* any related family or social problems, on which a decision may be based."

Here, the comma preceding the phrase "on which a decision may be based" helps ensure that the decision is based on the whole "portion of the patient's medical record and required documentation," not simply on the information subset pertaining to any related family or social problems.  Additionally, the phrase "that becomes . . ." does not appear in this construction.  Thus, using the phrase "that consists of" does not risk the same confusion here as it would with the claim terms "historical data," "storing historical data in a memory," and "comparing the historical data . . . ."  Nevertheless, in this case Defendants actually proposed using the phrase "consisting of."  There is no reason to disregard Defendants' preference.

*"Computing a component historical code based on said input and a set of stored historical criteria"*

Finally, the Court construes this term as:

[U]sing a computer during the patient encounter to determine a value associated with the historical component in generating a CPT code based on choices corresponding

14

to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation *consisting of* the patient's current health *and, optionally, any* previous medical history *and* any related family or social problems, on which a decision may be based.

2. Examination Component—Disputed Terms Rooted in "Examination Data"

The parties also disagree on constructions for the root term "examination data" and the branch terms "storing an examination data in a memory," "comparing the examination data to a set of examination criteria to define an examination code," "examination criteria," and "computing a component examination code based on said input and a set of stored examination criteria."

*"Examination data"*

Like in the case of "historical data," both sides derive their competing constructions of "examination data" from a single sentence in the specification:  "The examination component is the actual physical examination by the physician and any tests or procedures ordered or provided." '443 Patent, col 4:8-10.

Based on this language, Prompt construes "examination data" to mean "information *including* the actual physical examination by the physician *and/or* any tests or procedures ordered or provided that become the basis for the patient's medical record and required documentation." Defendants proposed the construction "information *that consists of* the actual physical examination by the physician *and* any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation."  Defendants noted that they chose the language "that consists of" solely "for the sake of readability and consistency in [their] proposed

15

constructions."  As such, Defendants stated they would not oppose replacing "that consists of" with the word "is" to conform more precisely to the specification's original language.

Like for its argument regarding the nature of the history component, Prompt argues that the nature of the examination component requires its proposed construction.  Prompt again cites to the AMA publication to show how the examination component, like the history component, is broken down into different types of patient history analysis, characterized by their level of detail—specifically, "problem focused exams," "expanded problem focused exams," "detailed exams," and "comprehensive exams."  *See* CPT '95 at 7.  Prompt also cites to language from the specification describing Figure 2:

> Vision 204 is the first section of the Examination component and if the criteria 204 is not met, Examination-component Code F 242 results.  If the criteria associated with Vision is met, the Visual Field section 206 is gathered.

*See* '443 Patent, col. 8:25-28.  Prompt argues that this language exemplifies the fact that physicians require flexibility in the examination process, because certain initial criteria must be met before proceeding with the examination.  For reasons similar to those Prompt articulated with respect to Defendants' original construction of "historical data," Prompt contends that Defendants' construction of "examination data" excludes preferred embodiments because it prohibits physicians from being able to choose whether to conduct an examination without additional tests and procedures.

Prompt is mistaken.  In using the verb "is," the sentence in column 4, lines 8 to 10—which both sides agree is the source skilled artisans will use to construe "examination data"—unambiguously identifies what constitutes the examination component.  The language requires the physician to conduct the actual physical examination and provides him or her the option

16

of ordering or providing more tests or procedures.  Nothing in Prompt's intrinsic citation would lead

a skilled artisan to believe that the sentence in column 4, lines 8 to 10 describes an examination

component that does not require an actual physical examination.  Although this restricts a

physician's flexibility, it is the result of the patentees having acted as their own lexicographers and

clearly disavowing any intent to make the actual physical examination an optional aspect of the

examination component.  *See Schoenhaus*, 440 F.3d at 1358; *Phillips*, 415 F.3d at 1316.

Moreover, as Defendants indicate, it strains credibility for Prompt to contend that

"examination data" need not always require information obtained from an actual examination.

Prompt protests this assertion, citing to a passage from the AMA's publication that indicates CPT

codes embrace physician consultations where the original physician seeks a second opinion.  But

Prompt's extrinsic citation is irrelevant because Prompt does not even contend that consultation

constitutes an examination.  Insofar as the parties seek to define "examination data," and by

extension to memorialize the examination component of the patient encounter, they are bound by

the language the patentees chose.  Further, even if Prompt's extrinsic citation were relevant, the

Court has no cause to consider it for purposes of construing the claims, given the clarity with which

the specification identifies what the examination component involves.  *See Phillips*, 415 F.3d at 1324

(noting that the court may consider extrinsic sources, but only if the sources are not used to

contradict claim meanings that are unambiguous in light of the intrinsic evidence); *Interactive Gift

Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("Relying on extrinsic

evidence to construe a claim is proper only when the claim language remains genuinely ambiguous

after consideration of the intrinsic evidence.") (internal quotes omitted).

17

Accordingly, the Court construes "examination data" to mean "information *that is* the actual physical examination by the physician *and* any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation."  Similar to the case of "historical data," using the verb conjugation "becomes" here helps ensure that the patient's medical record and required documentation are based on all the information that makes up examination data, not merely the tests or procedures.  Unlike in the case of "historical data," however, there appears to be no feasible way to ameliorate the redundant occurrence of the word "that" without sacrificing the crucial word "is."

Again, the reasoning that supports the Court's construction of "examination data" also supports the Court's constructions of the branch terms.

*"Storing an examination data in a memory"*

This term means "placing information *that is* the actual physical examination by the physician *and* any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation in a computer memory during the patient encounter."

*"Comparing the examination data to a set of examination criteria to define an examination code"*

The Court construes this term to mean:

[C]omparing information *that is* the actual physical examination by the physician *and* any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the examination component in generating a CPT code.

*"Examination criteria"*

The term "examination criteria" means "an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation *that is* the actual physical examination by the physician *and* any tests or procedures ordered or provided, on which a decision may be based."  Here, like in the case of "historical criteria," the comma preceding the phrase "on which a decision may be based" helps ensure that the decision is based on the whole "portion of the patient's medical record and required documentation," not merely on any tests or procedures ordered or provided.

*"Computing a component examination code based on said input and a set of stored examination criteria"*

Finally, the Court construes this term to mean:

> [U]sing a computer during the patient encounter to determine a value associated with the examination component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation *that is* the actual physical examination by the physician *and* any tests or procedures ordered or provided, on which a decision may be based.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix B.  The claims are set forth in Appendix A; the terms construed in all three actions are denoted in bold underline type and the terms construed only in the *3M* and *Unicor* actions are denoted in plain underline type.

19

**So ORDERED and SIGNED this 21st day of July, 2006.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

## APPENDIX A

## CLAIMS OF U.S. PATENT NO. 5,483,443 CONTAINING CONSTRUED TERMS

**1.**  A process for generation of Current Procedural Technology ("CPT") codes comprising:

storing historical data in a memory;

comparing the historical data to a set of **historical criteria** to define a history code;

storing an examination data in a memory**;**

comparing the examination data to a set of **examination criteria** to define an examination code; storing medical decision making data in a memory;

comparing the medical decision making data to a set of **medical decision making criteria** to define a medical decision making code;

comparing the historical code, the examination code, and the medical decision making code to a set of final criteria to define a final CPT code; and displaying the final CPT code.

**5.**  A process for computing Current Procedural Technology ("CPT") codes from documentation generated by a **medical professional,** said process comprising:

**displaying a set of queries to the medical professional**;

**receiving input from the medical professional in response to said queries**;

**computing a component historical code based on said input and a set of stored historical criteria**;

**computing a component examination code based on said input and a set of stored examination criteria**;

**computing a component medical decision code based on said input and a set of stored medical decision criteria**;

**computing a final CPT code based on said historical code, said examination code and said medical decision code and a set of stored patient encounter criteria**.

APPENDIX B

CLAIM TERM CONSTRUCTIONS FOR U.S. PATENT NO. 5,483,443

## 1.  Terms Construed in All Three Cases

| Claim Term | Court's Construction |
|---|---|
| **"medical professional"**<br><br>Claim 5 | **[Agreed]**<br><br>"The physician, assistant, nurse or other health care provider evaluating the patient's medical problem" |
| **"displaying a set of queries to the medical professional"**<br><br>Claim 5 | **[Agreed]**<br><br>"Prompting the medical professional with lists of choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation during the patient encounter" |
| **"receiving input from the medical professional in response to said queries"**<br><br>Claim 5 | **[Agreed]**<br><br>"Receiving during the patient encounter from the medical professional selections from lists of choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation" |
| **"computing a final CPT code based on said historical code, said examination code and said medical decision making code and a set of stored patient encounter criteria"**<br><br>Claim 5 | **[Agreed]**<br><br>"Using a computer during the patient encounter to determine the final CPT code based on the values associated with the historical component, examination component, and medical decision making component to an adjustable, customized standard related to the physician's encounter with the patient" |
| **"medical decision making criteria"**<br><br>Claims 1 and 5 | **[Agreed]**<br><br>"An adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation including information which is the result of the interaction of the history and examination portions of an encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based" |

| **"computing a component medical decision code based on said input and a set of stored medical decision making criteria"**<br><br>Claim 5 | **[Agreed]**<br><br>"Using a computer during the patient encounter to determine a value associated with the medical decision component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation including the information which is the result of the interaction of the history and examination portions of an encounter and represents a level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based" |
|---|---|
| **"historical criteria"**<br><br>Claims 1 and 5 | "An adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems, on which a decision may be based" |
| **"computing a component historical code based on said input and a set of stored historical criteria"**<br><br>Claim 5 | "Using a computer during the patient encounter to determine a value associated with the historical component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems, on which a decision may be based" |
| **"examination criteria"**<br><br>Claims 1 and 5 | "An adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation that is the actual physical examination by the physician and any tests or procedures ordered or provided, on which a decision may be based" |

23

| | |
|---|---|
| **"computing a component examination code based on said input and a set of stored examination criteria"**<br><br>Claim 5 | "Using a computer during the patient encounter to determine a value associated with the examination component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation that is the actual physical examination by the physician and any tests or procedures ordered or provided, on which a decision may be based" |

## 2.  Terms Construed in the *3M* and *Unicor* Cases Only

| **Claim Term** | **Court's Construction** |
|---|---|
| **"medical decision making data"**<br><br>Claim 1 | **[Agreed]**<br><br>"Information which is the result of the interaction of the history and examination portions of an encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation" |
| **"storing medical decision making data in a memory"**<br><br>Claim 5 | **[Agreed]**<br><br>"Placing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation in a computer memory during the patient encounter" |
| **"comparing the medical decision making data to a set of medical decision making criteria to define a medical decision making code"**<br><br>Claim 1 | **[Agreed]**<br><br>"Comparing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the medical decision making component in generating a CPT code" |

24

| | |
|---|---|
| **"comparing the historical code, the examination code, and the medical decision making code to a set of final criterial to define a final CPT code"**<br><br>Claim 1 | [Agreed]<br><br>"Comparing the values associated with the historical component, examination component, and medical decision making component to a standard on which the final CPT code is based during the patient encounter" |
| **"historical data"**<br><br>Claim 1 | "Information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis of the patient's medical record and required documentation" |
| **"storing historical data in a memory"**<br><br>Claim 1 | "Placing information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis of the patient's medical record and required documentation in a computer memory during the patient encounter" |
| **"comparing the historical data to a set of historical criteria to define a history code"**<br><br>Claim 1 | "Comparing information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the historical component in generating a CPT code" |
| **"examination data"**<br><br>Claim 1 | "Information that is the actual physical examination by the physician and any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation" |
| **"storing an examination data in a memory"**<br><br>Claim 1 | "Placing information that is the actual physical examination by the physician and any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation in a computer memory during the patient encounter" |
| **"comparing the examination data to a set of examination criteria to define an examination code"**<br><br>Claim 1 | "Comparing information that is the actual physical examination by the physician and any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the examination component in generating a CPT code" |

25